IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIJAH THOMPSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-4051 |
| | : | |
| DAVID HAINES, *et al.* | : | |
|     Defendants. | : | |

**MEMORANDUM**

**PADOVA, J.**                                                                                             **DECEMBER 14, 2022**

Elijah Thompson, a pretrial detainee currently confined at Chester County Prison ("CCP"), filed this civil rights action pursuant to 42 U.S.C. § 1983. Thompson asserts claims against David Haines (identified in the Complaint as a "correctional officer II" employed by CCP), Diorio (identified as a "sergeant correctional officer" for CCP), Cross (identified as a "correctional officer I" for CCP), and Jumi Lacinda (identified as a "nurse" employed by Prime Care Medical Inc.). Thompson also filed a Motion to Proceed *In Forma Pauperis* and submitted a copy of his institutional account statement. For the following reasons, the Court will grant Thompson leave to proceed *in forma pauperis*, dismiss his official capacity claims against all Defendants as well as his individual capacity claims against Jumi Lucinda without prejudice to amendment, and permit his excessive force claims against Haines, Diorio, and Cross in their individual capacities to proceed.

I.       **FACTUAL ALLEGATIONS**[1]

The bulk of Thompson's factual allegations center on a December 29, 2020 incident at CCP while he was a pretrial detainee. (Compl. (ECF No. 2) at 5, 7.)[2] Thompson alleges that on that date, he was in the medical observation room wearing a "'four-point' restraint system to prevent self-harm" following an unsuccessful suicide attempt. (*Id.* at 8.) At about 5:00 p.m., Haines and Diorio entered the medical observation cell with Thompson's dinner meal and removed his restraints. (*Id.*) Thompson noticed a "large glob of spit, along with several strands of hair" on top of his food. (*Id.*) He pointed this out to Haines, who laughed and told him to "eat around it." (*Id.*) When Thompson refused, Haines "scoffed," but ordered another meal be brought to the cell. (*Id.*) Diorio then told Thompson: "Since you want to play games, we've got something for you. You'll be in [the restraints] all night. Just watch." (*Id.*)

Thompson consumed his replacement meal and was permitted to use the bathroom. (*Id.*) Haines "threaten[ed] him with bodily harm" and before Thompson could relieve himself, Haines "instructed him that he was done and that it was time to return to the restraints." (*Id.*) Thompson alleges that his restraints were reapplied, but Diorio intentionally loosened one of the arm restraints and told Thompson to "do the world a favor and kill yourself." (*Id.*) Before leaving the cell, Haines pulled a hood over Thompson's head and face. (*Id.*) Thompson remained in the restraints for four to five hours "without any required temporary removals being performed by defendant Jumi Lacinda to allow him to stretch his limbs or use the bathroom." (*Id.*)

---

[1] The facts set forth in this Memorandum are taken from Thompson's Complaint.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

2

At approximately 9:00 p.m., Thompson removed his hand from the loosely applied restraint, removed the hood, and "began attempting to cause substantial harm to himself with the intention[] of committing suicide, which he saw as the only way to relieve himself of the physical and emotional trauma he was experiencing." (*Id.*)  Haines, Diorio, and Cross entered the cell. (*Id.* at 8-9.) Haines immediately approached Thompson and "began applying downward force to [Thompson's] head while pushing his thumbs directly into [Thompson's] eyes." (*Id.* at 9.) The loose restraint was resecured to Thompson's arm. (*Id.*) Diorio rubbed the hood inside of a toilet coated with human waste and handed it to Haines. (*Id.*) Haines "balled up the excrement-soaked hood and roughly forced it into [Thompson's] mouth while Diorio asked him 'How does that shit taste?'" (*Id.*) Cross held Thompson's legs while Haines reapplied the dirty hood to Thompson's head. (*Id.*) Diorio instructed Lacinda not to perform any temporary removals. (*Id.*) At some point later, Thompson asked Haines if he could use the bathroom, but Haines told him that he was not removing the restraints and he should "piss on [him]self." (*Id.*) Thompson was not permitted to use the bathroom and "was eventually forced to urinate on himself." (*Id.*) He was left restrained and soaking in urine until early the next morning, sometime between 2:00 and 4:00 a.m. (*Id.*) At that time two other correctional officers entered the cell and removed the restraints, but Thompson "was not permitted to bathe for at least two additional days." (*Id.*)

Thompson asserts violations of the Fourteenth Amendment because he was subjected to excessive force by Haines, Diorio, and Cross. (*Id.* at 6.) He further avers that Lacinda violated his rights to reasonable medical care and to be free from cruel and unusual punishment. (*Id.*) Thompson contends that as a result of the December 29, 2020 incident, he suffered from "temporary blindness and soreness in [his] eyes; sores inside [his] mouth; [and] severe

3

psychological trauma." (*Id.* at 7.) Thompson seeks $600,000 in punitive monetary damages "to punish the officers[] for their involvement in a blatant assault against a defenseless and mentally unstable individual" as well as $150,000 in compensatory monetary damages from Haines, Diorio, and Cross for pain, suffering, and medical expenses "for the undiagnosed sores which [he] suffers from as a result of this incident." (*Id.* at 10.) Thompson also seeks $200,000 in punitive damages and $75,000 in compensatory damages against Lacinda "for being deliberately indifferent . . . and failing to provide reasonable medical treatment and misusing medical restraints." (*Id.*)

## II.     STANDARD OF REVIEW

The Court grants Thompson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

---

[3] However, Thompson will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

4

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Thompson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### III. DISCUSSION

"To state a claim under [Section 1983 of Title 42 of the United States Code, the vehicle by which federal constitutional claims may be brought in federal court], a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Official Capacity Claims

Thompson has named all Defendants in their official capacities. Defendants Haines, Diorio, and Cross are employees of Chester County. (Compl. at 3-4.) The official capacity claims against employees of Chester County are, in essence, claims against the employing municipal entity. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55

(1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)), *cert. denied*, 140 S. Ct. (2019). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must allege that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

Similarly, "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, in order to hold a private health care company like Prime Care liable for a constitutional violation under § 1983, Thompson must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing

6

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).

To the extent Thompson seeks damages from any of the named Defendants in their official capacities, he has failed to allege facts that support *Monell* liability. Thompson has not identified any policy or custom of Chester County or Prime Care, nor has he alleged that such a policy or custom caused a constitutional violation. Accordingly, Thompson's *Monell*/official capacity claims are not plausible and must be dismissed. However, because the Court cannot say at this time that Thompson can never state a plausible *Monell*/official capacity claim, the dismissal will be without prejudice and Thompson will be permitted the opportunity to file an amended complaint if he can cure the defect the Court has identified.

**B.     Excessive Force**

Thompson brings excessive force claims against Haines, Diorio, and Cross. Because Thompson was a pretrial detainee during the relevant events, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or

unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Thompson avers that he was placed in restraints for a four-to-five-hour period with a hood over his head and face. (Compl. at 8.) After this period, Haines, Diorio, and Cross entered Thompson's cell, and Haines "began applying downward force to [Thompson's] head while pushing his thumbs directly into [Thompson's] eyes." (*Id.* at 9.) Diorio then rubbed the hood Thompson was wearing inside of a toilet coated with human waste and handed it to Haines who "balled up the excrement-soaked hood and roughly forced it into [Thompson's] mouth while Diorio asked [Thompson], 'How does that shit taste?'" (*Id.*) Cross held Thompson's legs while Haines reapplied the dirty hood to Thompson's head and Thompson was left in this condition for at least five hours, denied use of the bathroom, and was forced to urinate on himself. (*Id.*) As a result of the December 29, 2020 incident, Thompson alleges that he suffered from "temporary blindness and soreness in [his] eyes; sores inside [his] mouth; [and] severe psychological trauma." (*Id.* at 7.) These allegations are sufficient to state plausible excessive force claims against Haines, Diorio, and Cross, and these claims will be served for a responsive pleading.

      **C.**    **Deliberate Indifference to Medical Needs**

The Court understands Thompson's claims as alleging that Lacinda was deliberately indifferent to his serious medical needs because he was forced remain in restraints for at least

four to five hours "without any required temporary removals . . . to allow him to stretch his limbs or use the bathroom." (Compl. at 8.)  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal citations and quotations omitted).  Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Institutional*

---

[4] As it appears that Thompson was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

*Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id; see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Thompson does not allege who directed that he be placed in a "'four-point' restraint system to prevent self-harm," nor does he aver that Lacinda was aware that he was subject to such restraints for a period of four to five hours. There is also no indication that she was present when Haines, Diorio, and Cross entered Thompson's cell, and Haines began applying force to Thompson's head and pushing his thumbs into Thompson's eyes or Thompson was fitted with a hood containing human excrement. In fact, the only allegations in the Complaint concerning Lacinda are the allegations that Diorio instructed her not to perform any "temporary removals" and that she did not perform any "temporary removals." Accordingly, even construing the Complaint liberally, the Court cannot reasonably infer that Lacinda was even aware that

Thompson was placed in restraints that required temporary removals. It also cannot reasonably infer that Lacinda was aware that Thompson had been subject to any kind of force that required medical attention, because the Complaint fails to plead additional facts on this point.

Thompson has failed to set forth sufficient facts to support a plausible deliberate indifference claim against Lacinda. There simply are not enough facts in the Complaint to support a plausible inference that Lacinda was aware that Thompson required attention for a serious medical need and that she acted intentionally to refuse to provide medical treatment, delayed treatment, or personally prevented Thompson from receiving needed or recommended medical treatment. Accordingly, Thompson has not stated a plausible deliberate indifference claim for the failure to provide medical treatment. However, because the Court cannot say at this time that Thompson is incapable of curing these defects, the claim will be dismissed without prejudice, and Thompson will be given an opportunity to reassert the claim in an attempt to cure the defects.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Thompson leave to proceed *in forma pauperis* and dismiss his official capacity and medical deliberate indifference claims without prejudice for failure to state a claim. Because the Court cannot say at this time that Thompson cannot cure the defects in his official capacity and medical deliberate indifference claims, he will be granted the option of filing an amended complaint to assert a plausible basis for these claims.

The Court is prepared to direct service of the Complaint for a responsive pleading on Thompson's excessive force claims against Defendants Haines, Diorio, and Cross. Thompson may notify the Court that he wishes to proceed on these claims only. If Thompson chooses not to file an amended complaint, the Court will direct service of the Complaint on Defendants

11

Haines, Diorio, and Cross.  An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

/s/ John R. Padova, J.

**JOHN R. PADOVA, J.**
